Good morning, your honors. May it please the court, John McLean for California Attorney General Javier Becerra, and I would ask you to reserve five minutes. In California, retailers are allowed to charge credit card users more than cash users, but they have to do so in a way that the customer sees exactly what they will be paying if they use their credit card. So a retailer can post a credit price and a cash price, or a retailer can post a credit price with a cash discount. In either case, the customer is seeing exactly what they will pay in dollars and cents if they were to use their credit card. But if a retailer chooses to post a single regular price, they can often charge a credit card user more than that single regular price, whether that surcharge is disclosed or not. So let me understand whether, are you disagreeing with the challengers to the statute that what they want to do, what they put in their affidavits to the court is what they wanted to do? Are you saying that's permissible under the statute? Your Honor, if you actually look at their declarations, they are not clear as to what they want to do. They do not say how they're going to frame their prices and whether or how they're going to disclose them or what the customer will see. All they say is that they would like to charge credit card users more than cash users and describe the difference as a surcharge rather than as a discount, but they already can do that. Single pricing is permitted so long as the credit card, and they can describe it however they want, so long as the credit card user sees exactly what they will pay if they use their credit card. Yes, I read their declarations somewhat differently as indicating that they wanted to charge a price and then indicating that there is a 3% surcharge through the use of the credit card. They say that in their pleadings, Your Honor, and you can go back and look at their declarations. Well, just assume for the moment that they want to do it. Stop. Are you telling me they can do that or they can't? Assuming for the moment that they have alleged that they have told the court what they are going to do, they cannot post a single regular price and then charge the credit card users more than that, whether it's a 3% surcharge or a dollar's discount. What does the record tell us about what they are doing then? You said yourself there that it is Your Honor, and that actually goes to the other case here. You do not have an as-plied case, Your Honor, and if I could step back, the district court ordered by the district court to read this as a facial challenge, and the district court ordered by striking this down on its face, even though the statute regulates unjust impeachment, substantial amounts of deceptive clout against one another. That's been pretty well decided, though, by the Supreme Court of the United States. There's a lot of expressions here. I know, Your Honor, the Supreme Court of the United States told us that in one application of the statute, a fully disclosed surcharge through the statute implicates a speech. But in that case, the petitioners had, I'm going to call them the wrong name, but the person challenging the statute told the Supreme Court exactly what they did here. We're making an as-applied challenge, and the Supreme Court just took that and ran with it, that oral argument in the Supreme Court. These players are doing the same thing here. My question to you is why shouldn't we accept the fact that they want to restrict their argument to an as-applied challenge? Your Honor, on an appeal for summary judgment, usually the court does not take things and run with them. No oral argument in this court. There has to be evidence of what the plaintiffs intend to do. Going back to your question, Judge O'Stanley, the statute speaks much broader than just a fully disclosed surcharge situation. So the statute prohibits not only fully disclosing the California law, which is identical to the New York laws that are the penalties. The statute prohibits not only fully disclosed surcharges, but inadequately disclosed surcharges and surcharges that are not disclosed at all. In that context, it's not a regulation of speech. It's not telling the retailer how to frame their prices or how to communicate price information to their customers. It's a pure regulation of conduct. It's telling the retailer, don't tack on 50 cents if you see someone pulling out their credit card. So there are also – the statute does regulate some amount of speech. That's what the Supreme Court holds in expressions. But it also regulates a substantial amount of deceptive conduct in the district court order by striking out a statute on its face, even though it's valid in some of its implications. We don't – Well, it sounds fair to me. The district court actually did, because it said that it would like us to show us the compliance and then to join the statute. So, Father Charlie, will you clear it to me? What? Your Honor. What in the hell? Excuse me, Your Honor. If you look at the district court's order, it does not say it is unconstitutional. It does apply to the plaintiffs. It declares California Civil Code Section 1748.1 unconstitutional and joins its enforcement without limiting its order to the plaintiffs before the court. As the Supreme Court recognized in the 2010 Doe-Munn case, where a court issues an injunction that goes beyond the name to plaintiffs, that's the equivalent to striking down the statute on its face. So the district court ordered – going back to my colloquy with Judge O'Scanlan, we don't think the plaintiffs dispute that the statute is valid when it prohibits completely hidden surcharges. But if the district court's order is affirmed as it is, no specific law would prevent retailers from imposing completely hidden surcharges, and that's the error here. So you say if the district court's order is enforced as is, that it would be erroneous under what – how could the district court have ruled on this, in your view, and been within the law? After expressions, Your Honor, if the plaintiffs had alleged exactly what they were going to do and that fell within the – what the court – what the plaintiffs were alleging in expressions, and the district court said this is a task-applied challenge based on what the plaintiffs had told me in sworn declarations, then the court would proceed to whether the statute survives the scrutiny under the First Amendment. And I'll address that. But the district court didn't do any of that. It simply struck down the statute on its face. Even though the statute has valid implications, you're not challenging the breadth of the injunction, are you? Your Honor, so far as we can tell, the injunction is global. It does not limit the – the injunction is not limited to the circumstances of the plaintiff. So we are challenging it. You're not asking that the injunction be narrowed in some way. We're asking that the district court's order be reversed, currently, because it – Well, why couldn't we accept the petitioner – or the challenger's clarification that it's an as-applied challenge and rule on that and then tell the district court to narrow the injunction? Your Honor, the order before the court is the district court's order, the district court's order by striking down the statute on its face. Now, if the court wants to treat this as an as-applied challenge in the first instance, as your Honor said, take what they say at face value and run with it. Two issues. The first is the issue I identified where the plaintiffs have not actually said what they intend to do in the sworn declaration. So you really, truly would be accepting what is being said today and running with it. And because we don't know exactly what the plaintiffs intend to do based on what's in their declarations, we don't know if they've articulated it concretely to violate the statute, we don't know if the statute is vague as applied to them, and we don't know how to apply it in First Amendment scrutiny. But putting that aside, let's say the court goes the direction we're talking about in judgments and says that we are going to treat this as an as-applied challenge that is identical to excursions. The statute still survives First Amendment scrutiny under central Hudson. Under the first prong, the Supreme Court has told us that with a fully disclosed surcharge, the display of price information is lawful activity. But because we do not know what the plaintiffs do on the current record, we don't know if it is deceptive or not. Under the second prong, preventing customer deception is a substantial government interest. And under the third prong, the current regulation advances that interest. But it's way out of line. That's the fourth prong. Under the third prong, the current regulation advances that interest because there's very little room for deception. The customer is always seeing. It does weigh past deception. I mean, it does if under their theory, they just want to tell people put post 3% surcharge on all credit purchases in there. Place of business. If that's prohibited under the statute, then there are lots of ways that you can accomplish a deterrence to deception other than telling them they cannot say that because that is an accurate representation of what they want to do. You're not preventing them from misleading anybody. Your Honor, the concern here is the potential for abuse in terms of the size of the disclosure, the location of the disclosure, and the mathematical calculation in the disclosure. So, Your Honor. You really think that was what this is all about? Absolutely, Your Honor. Your Honor, you're right in that there may be situations where, and I'm getting into my rebuttal time, but I want to answer this question. There may be situations where the disclosure is clear enough and the mathematical calculation is simple enough that the reasonable American can immediately conclude, you know, it's a $10 price with a $1 surcharge. It's going to cost me $11 if I use my credit card. But there are many situations where that's not true. The price could just as easily be $23.87 with a 5.23% surcharge, and the concern is the potential for abuse. That's why in 1985, the California Department of Consumer Affairs supported this legislation because it worried that without it, if surcharges were allowed, there would be a tremendous amount of complaints to all levels of government by parties claiming ignorance of these charges, and who involves advertising. SCR 51, that's the agency. But you could regulate that as false advertising if you actually have something that's truly deceptive. But if you have a simple scheme that says 3% surcharge by credit transactions, it seems to me that that's pretty clear. In that case, it may be clear, Your Honor. But in many other cases, it's not. And the problem is that it's hard to multiply. It's got two decimal points after. It's two figures after the decimal point. That's one thing. But another thing is that there's other things besides the disclosure. The disclosure could be this big. Someone could be unhappy and say it should be this big. The disclosure could be located over here. Someone could say the disclosure should be located over here. The concern is the potential for abuse. And this is the state agency charged with rejecting consumers. The state agency puts its finger on the pulse of consumers, and it's concerned that if surcharges are allowed, there will be a flood of complaints and disputes. Your Honor, that's the state's interest stating a legitimate concern about the potential for abuse. Central Hudson requires a reasonable and appropriate statement in light of the concern about the potential for abuse. It was reasonable for the legislature to conclude that anything short of the maximum, a full disclosure of the maximum credit card price, was so potentially subject to abuse that the best way to prevent deception was to require that the credit card user always see the exact price they will pay in dollars and cents if they use their credit card. Well, what about if there were two prices shown, and there's a statement with it that says this additional price is a surcharge for the use of credit. Would you tell me that would be okay? That would be perfectly okay, because customers seeing exactly what they will pay. I don't think that's okay under that statute. That could be reasonably read as permissible under that statute. If you put that on the price tag, would you tell me that if that price tag says that this increment for the credit charge that's reflected there is a surcharge for the use of your credit card, that that would be miscalculated? If customers can see exactly what they're paying if they're using a credit card, yes. I understand. It would be different, I think. I read the declaration that says they would like to charge more for credit card transactions and to describe this price difference as a surcharge rather than a discount. The statute would prohibit that, right? Not if the customer can see exactly what they're going to pay. If the customers can see exactly what they're going to pay in dollars and cents, they can describe a number of requirements. You are completely rewriting the statute. I don't think so. You're under thrifty oil and the federal definitions, which we believe are incorporated into the California law and dual pricing. Those definitions are not in the California law. Your Honor. Not in the statute. Your Honor, the California court has to decide what is the definition of surcharge and discount. The court can either look at the dictionary or the court can look at the existing federal definitions, which we believe the most plausible interpretations of the California legislature are intended to rely on federal definitions under the federal scheme. Dual pricing was permitted under thrifty oil. Dual pricing is permitted. Thank you, counsel. I'll give you a couple minutes more. Thank you, Your Honor. Thank you. May it please the Court. Defendant, come to the plaintiffs. I'd like to start by being as clear as I possibly can about the scope of this challenge. There's been a lot of discussion about that. The plaintiffs here want to do precisely what the plaintiffs in expression want to do. They want to be able to post a price for cash, and then they want to be able to express prominently and disclose as much as possible an additional credit card price expressed as a percentage. As a percentage? As a percentage. As a percentage. If you look at the Ebrahimian Declaration, it's a declaration of one of the plaintiffs. In record excerpts, page 112, he says, he wants to, quote, express the price difference as an additional percentage. Now, I happen to be counsel to the plaintiffs in the expressions case. What's the price difference? That was 112, the two paragraphs of it. It needs to be clear about this from the beginning in the complaints, in the briefing in the district court, that we are not interested in deception. We are interested in fully disposing to consumers the additional cost of credits that they understand the EZEA credit card costs more. But the lead plaintiff in this case, Italian Conus Rastro, was also the lead plaintiff in the antitrust litigation that led to a settlement with the credit card companies that envisioned their contractual insurance restrictions and resulted in relief that required disclosure by merchants about the cost of credit promise disclosures. That's what they have been after since the beginning. So are you telling us it was always an as-applied challenge? Yes, and I wish we had been clearer, but we did not want this to be a facial challenge. And through the district court, in docket number 25 at page 9, we disclaimed any facial challenge. I think the district court got it right in its order when it said that it was finding at record 3 that this was an unconstitutional restriction on the plaintiff's freedom of speech. I wish that the district court, if I had had to write the order, I would have made that clear in the last paragraph of the order as well. But we certainly didn't frame this as a class action. We were not seeking relief for anyone other than the plaintiffs in this case as to the specific speech that they wished to engage in. It's not as described in the declarations. It's the same plaintiff's speech that the Supreme Court was describing in the expressionist decision. Counsel, do you still maintain your vagueness challenge after expressions? We're not pressing the vagueness challenge. We don't think we need to because I think if you affirm this as-applied challenge on First Amendment grounds, you don't need to reach vagueness. The statute would be unconstitutional in all the ways for the reasons that we care about, which is providing- The district court found this thing as well, so I was just wondering if you- The district court did, but I don't think it's necessary for this court to reach that analysis because we know that the statute applies to the kind of speech that we wish to engage in. Now, I do want to address the suggestion that I just heard for the first time by counsel for the state that somehow the statute does not reach that speech. We've been clear about this throughout in this litigation that what we want is to prominently explain to consumers that there is a surcharge for using a credit card. The time to tell us that the statute in the state's view didn't cover that has long passed, and that has been a really frustrating aspect of the litigation over these statutes is that their meanings have shifted in the state's view, and that's one of the reasons we included the vagueness challenge, but I think it is clear after the Supreme Court's decision, and it is clear from all of the litigation around the country, that these identical statutes have been read to reach the speech that we wish to engage in. And hasn't there been a lawsuit to challenge the type of pricing structure you're talking about? A civil suit? There is a civil suit, that's right, Your Honor. In fact, it's now up on appeal to this court. It's docket number 1755757. They obviously thought the statute could be read to prohibit what you wanted to do. Exactly. In that case, the district judge held that the application of the statute was a correct application of the statute, but it was unconstitutional for precisely the reasons that the district court held in this case. So Thrifty Oil never said that it was okay to post a sign with, say, 3% surcharge on credit. No, absolutely not. I mean, the Thrifty Oil decision is a pretty simple decision. There you had somebody that was posting a cash price and a credit card price. It didn't characterize the price difference as surcharge or as a discount. They were just providing that information. And the court was confronted with the question, well, if it doesn't frame it as a surcharge or as a discount, does it violate the statute? And I think the court sensibly concluded that's not a surcharge, but that doesn't say anything about the question here. Why shouldn't we certify this to the California Supreme Court to tell us what it means? Well, the State has never requested certification. The State hasn't suggested until oral argument a few minutes ago that there were any interpretive issues concerning the statute, and I just hope that is not the way federal constitutional adjudication should work. These are First Amendment rights at issue here. Our clients are entitled to a prompt adjudication of their rights. I also think that the Supreme Court's decision in expressions effectively rejected the suggestion by some of the justices that the appropriate course would be certification to the state court for the reason that, as Justice Roberts' opinion displayed, the Second Circuit had concluded that the kind of speech we wish to engage in here was covered by the identical New York statute. The U.S. Supreme Court accepted that interpretation is a reasonable reading of the New York statute. There's no reason why you shouldn't do the same here, particularly when the State hasn't even suggested interpretive issues, unlike the New York Solicitor General, which at least made those arguments draft the litigation. So what about this argument that there are no explicit definitions of the statute? Well, that's also the first we've heard of that. The California statute does not incorporate the federal definitions in the New York litigation. That was a subject of much controversy. Judge Rakoff addresses that issue in plaintiff's and his opinion on that. But, I mean, now it's far too late to raise that argument, and there's nothing in the statute to suggest it. And I think the Supreme Court's decision implicitly rejects the argument, because it's also an argument that the New York attorney general made in that case. Well, what this report said was that the Second Circuit interpreted the statute using essentially a dictionary-type definition of research origin, except they are for authoritative interpretation of the statute. That's right. That's right. And there's no reason not to do the same thing here, because everyone has understood this statute to reach the situation where we want to engage in here, which is to say there is a surcharge for credit. I mean, that would be reading this surcharge ban as permitting credit for a surcharge. It's a pretty anomalous reading, and it's not a reading of the statute that the State of California just briefed or argued until a few minutes ago. So I don't think that's the right way to do constitutional adjudication. That's not to say that certification might have benefits in some cases where the parties have legitimately have a disagreement, as you saw maybe in the previous case that was argued today. But this isn't anywhere close to that, because there hasn't been any briefing or argument about that question. If I may, I would just like to turn to the Central Hudson question, because I think that is really the question before you, is whether to defer the district court's Central Hudson analysis. And I think, as the colleague with my colleague brought out, the real action is the third and fourth prongs, and particularly the fourth prong. This statute is vastly overrun. If the State wanted, if it was legitimately concerned about consumer deception, it could have drafted a statute, which we would support, that would require a prominent disclosure. It didn't do that. And it didn't do that not because of some drafting error or because it made a mistake, but because this statute was championed by the credit card industry from the beginning as a way of hiding the cost of credit from consumers. That's why the Federal Trade Commission, the Federal Reserve Board, and all of the major consumer groups opposed this surcharge ban, both at the federal level and in California. Now, it's true that there was a group called Consumers Against Penalty Surcharges that supported this legislation, but as we explained in our briefing, that was a group that was being ruled by the credit card industry. This has never been legitimate consumer protection legislation. And there aren't any examples in the record in this case, or in any other cases of the statute being legitimately deployed to actually reach deception. The kind of bait-and-switch tactics that I think we've all agreed would not be permissible. And those types of tactics, of course, would run afoul of existing false advertising or state unfair deception practices, I suppose. So I think there's a reason why something like 22, now with you, it's 25 federal judges, have looked at these statutes, and nobody that has meaningfully applied sexual huts and scrutiny to these laws has concluded that they survive sexual huts and scrutiny. Thank you. Thank you. That's 15 minutes on the clock for rebuttal. Thank you, Your Honors. I think we're all on the same page in terms of there not being a compromised facial challenge here. The only question is whether the remedy is to remand it to the district court to deal with a more specific and well-tailored as-applied challenge, or whether to take it in the first instance. We believe that the problem really is to reverse the district court's facial ruling, to remand it to the district court for a more thorough as-applied challenge. Turning back to the judge basis, archaically about the Fourth Prong of Central Hudson, when they cited the California Department of Consumer Affairs, that was, again, the agency charged with protecting consumers in a contemporary statement, worried that if surcharges were allowed, there would be a tremendous amount of complaints to all levels of government. The parties claimed ignorance of the charges and were false advertising, so there was a real concern for abuse at the time. Just wanting to address the interpretive issue, no California court has determined how a discounted surcharge should be defined. We believe that the more plausible interpretations to apply the federal definitions, because of the timing, the federal ban expired in 1984, and the California ban was enacted in 1985, the legislative history in ADR 77, 84, and 94, where the California legislature referenced the federal ban as an impetus for the California ban, and seeing that by the sponsor of the bill to the governor, we're seeing that this bill may take the status quo of the federal laws, so that's a strong suggestion in the legislative history. That's in SCR 46, there's a strong suggestion in the legislative history that California intended to carry forward the force of the federal law into California. Thank you, Your Honors. Thank you. Thank you. The counsel will be informed. Thank you. Thank you. Thank you.
judges: O'scannlain, Rawlinson, Vance